Mapes Legal PC
Michael C. Mapes
State Bar No. 286939
131 S. Auburn Street
Grass Valley, CA 95945
Telephone: (530) 426-2868
Facsimile: (530) 665-8297

Attorney for Kapil Luther and Brikena Luther

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **KRISHAN K. GOPAL**<br><br>**Plaintiff,**<br><br>vs.<br><br>**KAPIL LUTHER, BRIKENA E. LUTHER CALIFORNIA RELIEF LLC,**<br><br>**and DOES 1-50 inclusive**<br><br>**Defendants.** | Case No. 2:21-cv-00735-KJM-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY THE PROCEEDINGS** |

## I.    INTRODUCTION

Pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act, Defendants Brikena Luther and Kapil Luther petition this Court for an order to dismiss, or in the alternative, stay the proceedings in the above captioned case, and order the parties to arbitrate all controversies in the pending JAMS matter.

## II.    SUMMARY OF RELEVANT FACTS

### A.  Background of the Parties

Brikena Luther, Kapil Luther ("the Luthers") and Krishan Gopal ("Mr. Gopal") are members of California Relief, LLC (the "Company"), which they founded on or around July 25, 2018. The Luthers and Mr. Gopal (along with a third Company member) executed an Operating

Agreement ("Operating Agreement") which contained the following terms:

> **Section 11.10. Arbitration.**
> Except as otherwise provided in this Agreement, any dispute arising out of this Agreement shall be submitted to the JAMS Arbitration for resolution. The arbitration shall be scheduled to take place in Sacramento County, California and all of the fees and costs of the arbitration shall be shared equally by the parties. Attorney fees may be awarded to the prevailing party at the discretion of the arbitrator, but the arbitrator shall have no power to alter or amend this Agreement or to award any relief inconsistent with the provisions herein or unavailable in a court of law.

A true and correct copy of the executed arbitration agreement is attached to the Declaration of Kapil Luther attached as Exhibit A. (Luther Dec. at Ex. A.) The Operating Agreement contained the following provisions with respect to sale or transfer of Membership Interest.

> **Section 7.1. Restriction on Transferability of Membership Interests.**
> A Member may not transfer, assign, encumber, or convey all or any part of his or her Membership interest in the Company, except as provided herein. In entering into this Agreement, each of the Members acknowledges the reasonableness of this restriction, which is intended to further the purposes of the Company and the relationships between the Members.
>
> …
>
> **Section 7.4. Transfers Not in Compliance with This Agreement.**
> Any transfer not in compliance with the provisions of Article VII of this Agreement shall be null and void and have no force or effect. (*Ibid*.)

In February 2020, the Luthers and Mr. Gopal entered into a purchase agreement whereby Mr. Gopal would purchase the membership interests of the Luthers. Brikena Luther and Kapil Luther each carried 16 and 2/3 percent membership interest in the Company, and Mr. Gopal held a 33 and 1/3 percent membership interest. The *Purchase and Sale Agreement of Certain Membership Interest of California Relief, LLC* ("Purchase Agreement") required Mr. Gopal to tender $700,000 in payments over an approximate period of 13 months. (Purchase Agreement at ¶ 3.). Upon tender of all payments, the Membership interest of the Luthers' would transfer to Mr. Gopal. Prior to the final payment, the Luthers were to remain members of the Company ("Seller A and B shall remain the part of this organization till the full and final payment as mentioned above is not paid to them by the Purchaser C." (Purchase Agreement at P 3.g.).). In order to carry out the terms of the

Purchase Agreement, an Escrow Agreement was entered into.  A true and correct copy of the Escrow Agreement and Purchase Agreement are attached to the Declaration of Kapil Luther filed concurrently herewith as Exhibit B.  The Escrow Holder under the escrow agreement was the law firm Diamond Baker Mitchell Cole, specifically Fran Cole of that firm.  Fran Cole of Diamond Baker Mitchell Cole is also representing Plaintiff in this action.[1]

Immediately after executing the Purchase Agreement, Plaintiff Gopal committed numerous and multiple breaches of the Operating Agreement and Purchase Agreement: the withholding of profit distributions, the concealment and refusal to disclose Company financial and operational documentation, and payments made not in accordance with the requirements of the escrow instructions.  The Luthers suspected that the payments being tendered by Plaintiff Gopal were being made with the Luthers' own money, i.e., claiming that profit distributions owed to the Luthers from the Company were being represented as purchase payments from Gopal, constituting a breach of both the Operating Agreement and Purchase Agreement.  The Luthers demanded Company documents including financial records and various reports that would reveal whether their suspicions were accurate.  Plaintiff Gopal refused any and all document production, all but confirming the Luthers' suspicions.  The Luthers thereafter issued a demand on the Escrow Holder (Fran Cole) to stay performance of the Purchase Agreement pending receipt and inspection of books and records.  Ms. Cole refused, an additional deposit of moneys was made into the account of Kapil Luther without his knowledge and consent and not in accordance with the terms of the Purchase Agreement or Escrow Instructions.  The Luthers then initiated arbitration with JAMS in accordance with the Operating Agreement.  A true and correct copy of the JAMS demand for arbitration is attached to the declaration of Kapil Luther filed concurrently herewith as Exhibit C.

---

[1] Note, under California Law, an escrow holder owes the parties to the escrow fiduciary duties.  The escrow holder is the agent and fiduciary of the principals to the escrow, and is defined to be a person who is lawfully engaged in the business of receiving escrows for deposit on behalf of or for delivery to the designated principals. As a fiduciary in performing its duties, the escrow holder must at all times exercise reasonable care, loyalty, and good faith towards the principals of the escrow. An escrow holder's fiduciary duty is generally limited to the faithful performance/execution of the instructions given by the principals to the escrow. (*See Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal. 4th 705, 711, Civil Code Section 2297 and Financial Code Section 17004.).  Representation by the law firm Diamond Baker Mitchell Cole and Fran Cole of the Luthers as parties to the escrow and subsequently representing Mr. Gopal regarding the sale transaction constitutes a breach of those duties and conflict of interests.

**B.  A Demand for Arbitration was Filed by the Luthers on March 27, 2021**

Between February 2020 and February 2021, a number of breaches between the Luthers and Mr. Gopal occurred.  These issues became the subject of the Luthers' Demand for Arbitration submitted to JAMS. The Demand for Arbitration claims the following:

- Mr. Gopal violated California Corporations Code §17704.10 by refusing to provide full and complete access to records of California Relief, LLC;
- Mr. Gopal breached his fiduciary duty to the Luthers pursuant to Section 5.5 of the Operating Agreement; and
- Mr. Gopal failed to distribute net profits to the Luthers between February 2020 and February 2021, in violation of the Company's Operating Agreement.

On March 24, 2021, Kapil Luther and Brikena Luther served their Demand for Arbitration on Mr. Gopal.  Instead of filing a counter claim in JAMS, Mr. Gopal filed and served the current action in Superior Court, personally serving Kapil Luther on March 27, 2021.  His Complaint, which should have been brought as a counter claim in JAMS arbitration, alleges a breach of contract per the Purchase Agreement, which arises out of and is required to be performed in compliance with the Operating Agreement (Operating Agreement at Paragraphs 7.1 and 7.4).

**C.  Plaintiff Gopal Refused to Arbitrate and JAMS Determined that the Matter was Proper for Arbitration.**

On April 19, 2021, Ms. Cole, attorney for Plaintiff Gopal and Escrow Holder, notified JAMS that her clients refused to arbitrate.  Counsel for Defendants responded, arguing that the matter was proper and within the mandatory arbitration clause.  The question was submitted to the JAMS Arbitrator, who determined that "JAMS will continue to administer this matter."  A true and correct copy of the email from counsel for Plaintiff refusing to participate in arbitration, the Luthers' response, and the JAMS Arbitrator's determination is attached to the Declaration of Michael C. Mapes as Exhibit A filed concurrently herewith.

**D.  Further State Court Action and Removal**

Shortly after initiating serving the Complaint, Plaintiff moved the Nevada County Superior Court for a TRO requiring that the Luthers transfer membership interest in the Company and

4

Defendants' Memorandum of Points and Authorities ISO Motion to Compel Arbitration

transfer license holder status for all licenses associated with cannabis cultivation to Plaintiff Gopal. The court denied the TRO request seeking an immediate transfer of membership interest and license holder status, instead issuing an order requiring the status quo be maintained. The order specified that the Luthers will maintain the license in good standing and bother parties will exchange all information necessary to meet that objective. The Court did issue an order to show cause regarding a preliminary injunction.

Prior to issuing an order on the preliminary injunction, however, the Luthers removed this action to this Court. Removal is based upon diversity of citizenship under 28 U.S.C. 1332, 1441, and 1446. Plaintiff Gopal is domiciled in Texas. Defendants Luther are domiciled in Missouri. In his complaint, Plaintiff Gopal demands $2,500,000 in damages.

### III.   LEGAL ANALYSIS

The FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Section 4 of the FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. In determining whether to issue an order compelling arbitration, "the court bears in mind that 'an agreement to arbitrate is a matter of contract: "it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."'" *Golden v. Dameron Hosp. Ass'n*, 2012 WL 4208779, at * 2 (E.D.Cal., Sept. 19, 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130(9th Cir. 2000)(quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995))); see also AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit"). Thus, the court looks first to the express terms of the contract. Id. "The court's determination is then limited to: (1) whether a valid, enforceable agreement to arbitrate exists; and (2) whether the claims at issue fall within the scope of the agreement to arbitrate, and (3) whether there has been a waiver of the right to arbitrate by the moving party." Id. (*Daisy Mfg. Co. v. NCR Corp.* 29 F.3.d. 389, 392 (8th Cir. 1994) see also *Chiron Corp.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the answer to all of these queries is

affirmative, the court must order the parties to arbitrate in accordance with the terms of their agreement." Id. (citing 9 U.S.C. § 4).  "*The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.*" *Moses H. Cone Mem. Hosp. v. Mercury Const. Co.*, 460 U.S. 1 at 24, 25 (1983) (emphasis supplied.)

**A. The Operating Agreement compels arbitration and the claims at issue fall within the scope of the Operating Agreement.**

On the face of the Operating Agreement, arbitration must be compelled.  Any dispute "arising out of" the Operating Agreement must go through arbitration per Section 11.10.  All disputes at hand are those that arise out of the Operating Agreement.  Regarding the Luthers' claims, all three disputes concern Mr. Gopal's violation of the Operating Agreement for his breach of fiduciary and other duties thereunder.

Regarding Mr. Gopal's claim that he filed in State Court, which has been removed, he is asserting breaches of Purchase Agreement, which thereby triggers the arbitration clause in the Operating Agreement which requires any subsequent purchase or transfer of membership interest to be compliant with the terms of the Operating Agreement or it is void.  (Operating Agreement at Paragraphs 7.1 and 7.4)

The Operating Agreement's arbitration clause states that any dispute "arising out of" the Operating Agreement necessitates arbitration.  The following are issues "arising out of" the Operating Agreement, for which Mr. Gopal's breach of contract claim concerns:

1) Whether the Luthers remained as members and were entitled to profits during the year pending closure of the Purchase Agreement.  The issue of profits requires interpretation of the Operating Agreement, and any dispute as to membership profits is an issue that arises out of the Operating Agreement per Articles VI and VII thereunder.

2) Whether the Purchase Agreement can still be enforced even though its terms were not "satisfactory to the Members" due to fraud, mistake, or other illegalities.  This is an issue arising out of the Operating Agreement, per Section 7.2(a) thereunder.

3) Currently, the Plaintiff is objecting to arbitration.  The Plaintiff is thereby asserting that not

all of the terms of the Operating Agreement beyond Article VII needed to be applied to the Purchase Agreement. That issue requires interpretation of the Operating Agreement, particularly Section 7.2(a) and Section 7.4, the latter of which would void the Purchase Agreement altogether.

A valid and enforceable Arbitration Agreement exists, as had been verified by the JAMS Arbitrator. Further, all disputes relating to violation of the terms of the operating agreement or violation of the subsequent purchase agreement, all are expressly required to be determined by arbitration. Therefore, the first considerations under the Court's analysis are satisfied.

### B. No waiver has occurred with respect to the right to arbitration.

To establish waiver, Plaintiff Gopal must show by clear and convincing evidence that Defendant waived its right to arbitration per the Operating Agreement. That waiver must be an "intentional relinquishment of a known right after knowledge of the facts." *Foesch v. De Mota* (1944) 24 Cal.2d 563, 572. The Luthers have acted at all times to enforce the Operating Agreement and arbitration provisions thereunder. This is demonstrated by filing and serving, first the demand for arbitration, and now moving this Court for an order enforcing the arbitration provision. While it is true that the Purchase Agreement does not contain an arbitration provision, is also does not contain an integration clause, novation, or any indication that any terms contained therein superseded the Operating Agreement. Further, the Escrow Agreement drafted to carry out the terms of the Operating Agreement also contains an arbitration provision. It would be reasonable for any party to these two agreements to conclude that the arbitration agreement would still apply, as all parties were members of the Company and conducted the sale of membership interests in accordance with the Operating Agreement.

### C. The Court should dismiss or stay the pending action because the claims asserted by Plaintiff Gopal cannot be resolved until a determination is made regarding distribution of profits to the Luthers.

The gravamen of the dispute, as alleged by the Luthers, is the withholding of information and profits by Gopal and his legal representatives. Essentially, that Gopal used the Luthers' own moneys/profits while members of the Company to meet his individual payment obligations under

the Purchase Agreement. The gravamen of the dispute, as alleged by Gopal, is the failure of the Luthers to transfer membership interest and license holder status in compliance with the Purchase Agreement. The two claims absolutely involve common questions of law and fact, and neither claim can be provided without establishing the other. Therefore, the entire matter should be dismissed and referred for resolution to JAMS where this matter is already pending.

### IV.    CONCLUSION

Defendants Kapil and Brikena E. Luther respectfully request this court dismiss, or in the alternative, stay this action and order the parties to participate in mandatory arbitration. Considering the original Operating Agreement contained a mandatory arbitration provision which applies directly to claims and defenses of both actions, no waiver has occurred, and the policy greatly favoring arbitration, dismissal is appropriate.

Dated: 04/28/2021                                    Signed: _____
                                                                    Michael C. Mapes
                                                                    Attorney for Defendants Kapil Luther
                                                                    and Brikena E Lither

8
Defendants' Memorandum of Points and Authorities ISO Motion to Compel Arbitration